BARNES, J.,
 

 for the Court:
 

 ¶ 1. The Public Employees’ Retirement System of Mississippi (PERS) denied non-duty related disability benefits to Susan McDonnell, who appealed the denial to the Hinds County Circuit Court. The circuit court reversed the PERS decision, and PERS now appeals. Finding that the denial of disability benefits by PERS was not supported by substantial evidence and was, thus, arbitrary and capricious, we affirm the circuit court’s judgment.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. McDonnell was a computer discovery teacher employed by the Biloxi Public School District in Biloxi, Mississippi. Her duties were to monitor students’ computer skills during seven periods of classes, and the job required her to be continuously on her feet walking around the classroom. In December 2006, she sought medical treatment from Dr. Douglas Leavengood, a
 
 *266
 
 board-certified internist with a sub-speciality in allergy and immunology, who diagnosed her with bursitis and tendonitis.
 
 [1]
 
 On January 27, 2007, McDonnell saw Dr. Terry Smith, who had performed her back surgery. She told Dr. Smith that she was not having much pain and not taking any medication. However, she later started experiencing swelling in her right ankle, forcing her to limp around her classroom. She consulted an orthopedic specialist, Dr. Theodore Jordan, on March 16, 2007. Her x-rays showed “moderated degenerative” changes in her right ankle. Dr. Jordan completed a physician’s form 7, which stated that McDonnell had moderate degenerative joint disease in her ankle and bursitis in her hip and that he expected her condition to deteriorate.
 

 ¶ 3. Two weeks later, she saw another doctor, Dr. Dudley Burwell, a board-certified orthopedist, with the same complaint. She claimed that Dr. Jordan’s medical treatment was not helping her pain. Dr. Burwell diagnosed McDonnell with degenerative joint disease of the right ankle with tendonitis and treated the ankle with a cortisone shot, which McDonnell reported gave her relief from pain. However, she returned to Dr. Burwell in May 2007 as she was experiencing more swelling in her ankle. On June 4, 2007, McDonnell visited Dr. Leavengood complaining of pain in her left foot. After his examination, Dr. Leav-engood filled out a physician’s form 7 stating that McDonnell was not able to stand for eighty-five percent of the day (as required in her job description) and that she needed to sit frequently. McDonnell visited Dr. Burwell again on October 3, 2007, and received another cortisone injection. Dr. Burwell also completed a physician’s form 7, stating that McDonnell had degenerative joint disease in both ankles, pain, and swelling. He recommended that she limit her walking, standing, and climbing. She received another cortisone injection on December 19, 2007. This was followed by additional injections — one on January 30, 2008, and one on March 12, 2008. However, McDonnell later testified that the cortisone injections were becoming increasingly less effective in treating her ongoing pain.
 

 ¶ 4. During this period, after twenty-nine years of credited service, McDonnell retired on August 31, 2007, and applied for non-duty related disability on October 12, 2007, due to her ankle pain and swelling. In response to a request by PERS, McDonnell underwent an independent medical evaluation by Dr. Phillip J. Blount, an orthopedic specialist, on January 28, 2008. McDonnell told Dr. Blount that: she wears special shoes to alleviate her foot discomfort; she intermittently uses a cane; and she uses a motorized scooter when shopping. She also said that she experienced lower-back pain when standing for long periods. Dr. Blount noted that McDonnell had recently lost twenty-five pounds and was performing some pool therapy at home. In his assessment, Dr. Blount stated that McDonnell had bilateral osteoarthritis in her ankles. He submitted that continuing to work as a teacher posed no additional risk to her condition. He briefly addressed the issue of McDonnell’s pain, noting: “Tolerance is in question and
 
 *267
 
 it would be her choice if she wanted to stop teaching.” Dr. Leavengood wrote a letter, in response to Dr. Blount’s evaluation, agreeing that continuing to work would not worsen McDonnell’s condition; however, he opined that her pain would hinder her from performing her duties.
 

 ¶ 5. The PERS Medical Review Board denied McDonnell’s application for non-duty related disability benefits on March 6, 2008, finding “insufficient objective evidence to support the claim.” McDonnell appealed, and a hearing was held before the PERS Disability Appeals Committee (the Committee) on June 2, 2008. McDonnell was present at the hearing and represented by counsel. The Committee, which was comprised of two physicians and a chief hearing officer who was a nurse/attorney, concluded in its findings that there was no evidence that McDonnell’s condition was so severe as to consider her disabled and unable to perform her duties. The Committee admitted that it had “no reason to doubt that Mrs. McDonnell has ankle pain” and noted that the cortisone injections she receives “probably interferes with her diabetes.” However, it found Dr. Blount’s independent medical evaluation— that McDonnell was “at no risk for continuing her job with her description outline” — “more persuasive” than the differing opinions from McDonnell’s treating physicians. The Committee failed to mention that Dr. Blount observed that “[t]oler-anee is in question[.]” The Committee did note that McDonnell “remains well above her normal weight” and “has not done enough to try and accommodate her physical problems at work.” Specifically, it found that McDonnell “had not considered using a [motorized] scooter at work” and that she had the option of linking “the student’s computer monitors and keyboards” to her desk computer in order to remain in the classroom if that is what “[she] really desired to do.”
 

 ¶ 6. On September 11, 2008, McDonnell appealed PERS’s denial of her disability benefits to the Hinds County Circuit Court. Finding that McDonnell’s condition was disabling and the direct cause of her withdrawal from state employment, the circuit court reversed PERS’s ruling and granted McDonnell disability benefits. The circuit court held “that the PERS decision was not supported by substantial evidence, and was arbitrary and capricious.” PERS now appeals the circuit court’s reversal of its ruling. We affirm the circuit court’s judgment.
 

 STANDARD OF REVIEW
 

 ¶ 7. The standard of review of an administrative agency’s finding and decisions is limited.
 
 Pub. Employees' Ret. Sys. v. Howard,
 
 905 So.2d 1279, 1284 (¶ 13) (Miss.2005) (citing
 
 Pub. Employees’ Ret. Sys. v. Marquez,
 
 774 So.2d 421, 425 (¶ 11) (Miss.2000)). Under Rule 5.03 of the Uniform Rules of Circuit and County Court, we will not disturb an agency’s decision unless it: “(1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional rights.”
 
 Pub. Employees’ Ret. Sys. v. Dishmon,
 
 17 So.3d 87, 91 (¶ 18) (Miss.2009) (citing
 
 Marquez,
 
 774 So.2d at 425 (¶ 11)). However, “we may not substitute our judgment for that of PERS, or re[-]weigh the evidence before the agency.”
 
 Pub. Employees’ Ret. Sys. v. Kellum,
 
 878 So.2d 1044, 1047 (¶6) (Miss.Ct.App. 2004) (citing
 
 Pub. Employees’ Ret. Sys. v. Ross,
 
 829 So.2d 1238, 1240 (¶ 11) (Miss. 2002)). If the agency’s decision is found not to be based on substantial evidence, then it is considered “arbitrary and capricious.”
 
 Wright v. Pub. Employees’ Ret. Sys.,
 
 24 So.3d 382, 386 (¶ 17) (Miss.Ct.App.2009) (citing
 
 Pub. Employees’ Ret. Sys. v.
 
 
 *268
 

 Allen,
 
 834 So.2d 50, 53 (¶ 10) (Miss.Ct.App.2002)).
 

 I. Whether the circuit court erred in finding that the denial of disability benefits to McDonnell was not supported by substantial evidence and was arbitrary and capricious.
 

 ¶ 8. Mississippi Code Annotated section 25-11-113(1)(a) (Rev.2006) states, in pertinent part, that:
 

 For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees’ Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.
 

 PERS claims that McDonnell’s pain does not interfere with her duties; thus, she is not disabled within the meaning of the statute. McDonnell contends that PERS only considered objective medical evidence, 1.e., Dr. Blount’s report, in rendering its decision and that it excluded any medical evidence related to McDonnell’s pain.
 

 ¶ 9. McDonnell’s official job description states that her job requires “5% sitting, 10% walking, and 85% standing.” The PERS “Employer’s Certification of Job Requirements” also noted that the job required continuous walking and standing. One of McDonnell’s colleagues submitted a statement, claiming that McDonnell’s condition “became progressively worse over time,” and “she was in continual pain and her mobility around school and in the classroom was interfering with her ability to give her best to her students.” Another colleague commented that McDonnell was forced sometimes to elevate her ankle at her desk and stated that McDonnell “tried her best to attempt the endeavor of giving the students’ individualized instructions but it got difficult because of her ankle.” In the PERS form that McDonnell filled out, she stated that she had missed thirty-four days in the last twelve months due to her “disability.”
 

 ¶ 10. PERS contends on appeal that “[wjhile it is true that pain is a subjective condition, PERS, has recognized that there can be, and must be, objective medical evidence; evidence of a diagnosis based on objective medical science that adequately supports the subjective complaint of pain, and convinces the Board that the pain is disabling.” Thus, PERS contends that McDonnell’s “subjective complaint of pain” was not supported by “objective medical evidence” that her pain is disabling. We find nothing in the record to support this conclusion. Objective medical evidence recognizing McDonnell’s pain was well-documented in the record. Both Dr. Leavengood and Dr. Burwell diagnosed McDonnell with moderate to severe degenerative joint disease in her ankles and recommended that she limit her standing and walking. Dr. Burwell was also providing frequent cortisone treatment for McDonnell’s pain. Even Dr. Blount, who was told to report only “objective medical evidence,”
 
 [2]
 
 observed in his report that
 
 *269
 
 “[t]olerance is in question.” Yet, PERS does not acknowledge this statement by Dr. Blount. Although the Committee did state that it “has no reason to doubt that Ms. McDonnell has ankle pain[,]” it contended that this pain could be controlled with injections. However, the record reflects that the frequency of cortisone injections was increasing in order to alleviate McDonnell’s pain, and the Committee admitted in its analysis that this could be detrimental to McDonnell’s diabetes. Furthermore, the Committee, while recognizing the “differing opinions regarding the severity of disease in Ms. McDonnell’s ankles,” refutes these other medical opinions from McDonnell’s treating physicians by relying merely on its own reading of McDonnell’s x-rays, asserting that her disease is only mild to moderate.
 

 ¶ 11. Substantial evidence is “something more than a ‘mere scintilla’ or suspicion”; rather, the evidence must “provide[ ] an adequate basis of fact from which the fact in issue can be reasonably inferred.”
 
 Henley v. Pub. Employees’ Ret. Sys. of Miss.,
 
 26 So.3d 1108, 1110 (¶13) (Miss.Ct.App.2010) (citations omitted). Substantial evidence that supports an agency’s decision “is, in fact, the absence of credible evidence presented on behalf of the party having the burden of proof on the issue that compels the denial of relief.”
 
 Id.
 
 (quoting
 
 Pub. Employees’ Ret. Sys. v. Cobb,
 
 839 So.2d 605, 609 (¶ 15) (Miss.Ct. App.2003)). “The agency, not the reviewing court, acts as the finder of fact.”
 
 Wright,
 
 24 So.3d at 387 (¶24) (quoting
 
 Case v. Pub. Employees’ Ret. Sys.,
 
 973 So.2d 301, 311 (¶ 23) (Miss.Ct.App.2008)). “Fact-finding includes evaluating the credibility of witnesses, and PERS has the sole responsibility for determining which medical evaluations to rely upon.”
 
 Id.
 
 (citing
 
 Cobb,
 
 839 So.2d at 609 (¶ 12)). This Court has acknowledged that “PERS has the discretion to determine which physicians’ assessments to consider and how much weight should be given to each assessment.”
 
 Id.
 
 at 388-89 (¶ 33) (quoting
 
 Brakefield v. Pub. Employees’ Ret. Sys.,
 
 940 So.2d 945, 948 (¶12) (Miss.Ct.App.2006)). “However, the supreme court has previously held that PERS’s opinion is not conclusive, and PERS cannot choose to ignore uncontroverted evidence provided by treating physicians.”
 
 Id.
 
 at 390 (¶ 39) (citing
 
 Pub. Employees’ Ret. Sys. v. Dearman,
 
 846 So.2d 1014, 1018 (¶ 11) (Miss.2003)).
 

 ¶ 12. In its findings, the Committee contended that McDonnell’s “disease [was] not severe,” a finding that it admitted was contrary to the majority of the medical opinions presented. Furthermore, the Committee strongly relied on non-medical conclusions in supporting its denial, such as the fact that McDonnell did not complete her physical therapy relating to an earlier condition, and her failure to “help herself’ by controlling her weight and requesting accommodation. It claimed that McDonnell did not consider using an motorized scooter to move around her classroom to monitor students, nor did she utilize the option of having the students’ computers linked to hers for monitoring purposes.
 

 ¶ 13. In a similar case involving a denial of disability benefits,
 
 Stevison v. Public Employees’ Retirement System,
 
 966 So.2d 874, 880-82 (¶¶ 19, 25) (Miss.Ct.App.2007), this Court found that PERS’s denial of disability benefits was not supported by substantial evidence as “no medical professional expressed any doubts about the le
 
 *270
 
 gitimacy of [Sheryl] Stevison’s complaints of pain,” and “no record evidence tended to show that Stevison could perform the usual duties of her employment.” Here, there is objective medical evidence from several doctors that McDonnell has degenerative joint disease in her ankles. Although Dr. Blount stated that McDonnell was “at no risk for continuing her job,” he also noted that “[t]olerance is in question.” Responding to Dr. Blount’s evaluation, Dr. Leavengood expressed:
 

 If disability is predicated on the risk for progressive damage to her osteoarthritic ankles, then I must defer to Dr. Blount’s expertise. I would argue, on the other hand, that
 
 pain from, obviously diseased joints can reach a level which prevents adequate performance of her teaching duties.
 
 I have followed Mrs. McDonnell for several years for a variety of medical problems[,] including the severe ankle pain which has markedly contracted her physical activities. As I have stated previously[,]
 
 it is my medical opinion that Mrs. McDonnell’s pain level has reached the point which reasonably precludes the adequate performance of her teaching duties.
 

 (Emphasis added). Dr. Leavengood is referring to his previous medical opinion that McDonnell does not have the ability to stand for eighty-five percent of her work day as reflected in the physician’s form 7 dated November 11, 2007. Moreover, Dr. Burwell, an orthopedic specialist who treated McDonnell for her ankle problems, noted that McDonnell’s limited ability to walk, stand or climb was a “permanent partial disability,” and her condition was “degenerative.” Thus, two physicians other than Dr. Blount — an internist and an orthopedic specialist — submitted that McDonnell had “permanent partial impairments” that limited the time that she would stand or walk during the day. As the supreme court has aptly noted: “If medical diagnoses by licensed physicians are to be labeled ‘subjective’ evidence of medical ailments, it is unclear what PERS would consider to be ‘objective’ evidence.”
 
 Marquez,
 
 774 So.2d at 427 (¶ 22).
 

 ¶ 14. Regarding the Committee’s denial of benefits based on the fact that McDonnell did not request any accommodation from her employer for her medical problem, we find there was undisputed testimony that the accommodations requested by the Committee were not adequate for the performance of the job. At the hearing, the Committee asked whether McDonnell could monitor the students from her desk. While she admitted that she could do so, McDonnell maintained that she would not be effectively performing her duties, testifying as follows:
 

 Q. Could you sit when you were teaching?
 

 A. You’re not supposed to.
 

 Q. Could you effectively do it and sit?
 

 A. No.
 

 There is nothing in the record to contradict McDonnell’s denial. We also find the Committee’s statement, that McDonnell “had not considered using a scooter at work,” not supported by McDonnell’s testimony. When asked whether she could use a motorized scooter to get around the classroom, McDonnell declared that she had tried this method; however, she also thought that it was not effective. She explained that the scooter made it difficult to get around the students, and because she was at a lower height, she was unable adequately to observe their keyboard skills. There is also nothing in the record to support the Committee’s conclusion that linking the students’ computers to McDonnell’s desk would be sufficient in monitoring the students’ keyboard skills. Furthermore, McDonnell also stated in her disability benefits application that, even
 
 *271
 
 when sitting at her desk, her ankles hurt when not elevated. Thus, based on our review of the record, we find that any reliance on this reasoning for the denial of benefits was not only speculative, but arbitrary and capricious.
 

 ¶ 15. The determination of disability benefits is not “whether the claimant has presented enough evidence to prove he or she is disabled, ‘but whether PERS has presented enough evidence to support its finding that the claimant is not disabled.’ ”
 
 Dishmon,
 
 17 So.3d at 92 (¶ 19) (citing
 
 Pub. Employees’ Ret. Sys. v. Henderson,
 
 867 So.2d 262, 264 (¶5) (Miss.Ct.App.2003)). We find that PERS’s denial of non-duty related disability benefits to McDonnell was not supported by substantial evidence and affirm the circuit court’s reversal of that decision.
 

 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . We will only address the medical evidence which pertains to McDonnell's problems with her ankles, as this was the sole medical ailment on which her application for disability was based. We do note that McDonnell had been previously diagnosed with bursitis and mild degenerative joint disease in her knee. She also had two prior back surgeries — one several years ago and one in November 2006. Although the PERS Disability Appeals Committee did briefly note non-compliance with rehabilitation, McDonnell's rehabilitation was begun in 2005 to assist with her lumbar sten-osis (back surgery) and is, thus, not relevant to the issue here.
 

 [2]
 

 . In the PERS letter sent to Dr. Blount regarding McDonnell's referral for an independent medical evaluation, it stated:
 

 The determination of disability
 
 must be based on objective medical evidence
 
 .... [I]f,
 
 on the basis of objective medical evidence,
 
 a medical condition is documented which is of such severity, chronicity, and/or is non-responsive to adequate medical treatment resulting in functional limitations and re
 
 *269
 
 strictions preventing performance of essential job functions, the applicant's claim is approved.
 

 (Emphasis added).